**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Allen Yost,<br><br>            Petitioner,<br><br>v.<br><br>United States of America,<br><br>            Respondent. | No. CV-23-00100-TUC-JGZ<br>No. CR-20-02523-TUC-JGZ<br><br>**ORDER** |

　　　Petitioner Robert Allen Yost, who is confined in the Federal Correctional Institution in Seagoville, Texas, has filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. The motion is fully briefed. (CV Docs. 1, 4, 5.)[1] Upon review of the record, and for the reasons that follow, the Court will deny the Motion. 20-2370.

**I.      Background**

　　　On March 10, 2020, Petitioner was arrested while transporting four persons illegally present in the United States. (CR Doc. 129, ¶¶ 14-16.)  He was charged in case CR 20-2370, with conspiracy to transport illegal aliens or profit (Count 1) and transportation of illegal aliens for profit (Counts 2-5). (*Id.,* ¶¶ 3, 14-16.)

　　　In a post-*Miranda* interview, Petitioner gave agents written consent to search his

---

[1] Petitioner pled guilty and was sentenced in two separate criminal cases on the same dates: CR 20-2370 and CR 20-2523.  Petitioner only raises challenges with respect to case 20-2523. For clarity, citations to "CR Doc." refer to the docket entries in that case. Citations to "CV Doc." refer to the docket entries in the parallel civil case, CV 23-100.

cell phone. (CV Doc. 4, Attach. A, B.) During a forensic download of the phone, an agent observed photographs and videos of child pornography. (*Id.,* Attach. C.) The agent stopped the search and obtained a search warrant. (*Id.*) A further search of the phone revealed child pornography and text conversations between Petitioner and co-defendant Henry Ramos regarding exchanging drugs for child pornography and access to Ramos' minor nephew for purposes of sexual contact.

Petitioner was subsequently charged in five counts of an eight-count Indictment with conspiracy to sex traffic children (Count 1); receipt of child pornography (Counts 3 and 5); production of child pornography (Count 4); and possession of child pornography (Count 8). (CR Doc. 29.) Petitioner pled guilty to Counts 1 and 4 pursuant to a written plea agreement. (CR Doc. 92.) The agreement provided for a binding sentencing range of 180 to 188 months of imprisonment, followed by lifetime Supervised Release. (*Id.* at 3.) The government agreed to dismiss Counts 3, 5 and 8 at sentencing, and Petitioner agreed to waive any objections to a sentence imposed within the stipulated range; any right to appeal the Court's entry of judgment; the imposition of sentence under 18 U.S.C. § 3742; the district court's refusal to grant a requested variance; any right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255, or any other collateral attack; and any other challenge to his conviction or sentence. (*Id.* at 1, 11.)

Petitioner pled guilty in both criminal cases on the same date. At the change of plea hearing, the Magistrate Judge confirmed Petitioner was aware of the maximum term of imprisonment for all of the charges. Petitioner was specifically informed that the maximum term of imprisonment for Count 1 was life and for Count 4 was 30 years' imprisonment. (CR Doc. 160 at 11.) The Magistrate Judge explained that Petitioner faced a minimum term of 15 years' imprisonment as to Count 4 and that, under the plea agreement, he would receive concurrent terms of imprisonment of up to 188 months. (CR Doc. 160 at 6, 11.) She confirmed that Petitioner was aware that if the district court imposed a sentence consistent with his plea agreement, he was waiving his right to appeal, and waiving his trial rights, including his right to cross-examine the government's witnesses and subpoena

witnesses in his defense. Petitioner acknowledged the terms of the plea agreement and his waiver of rights, and pled guilty to Counts 1 and 4, providing a factual basis in which he admitted that he agreed to provide methamphetamine to co-defendant Henry Ramos in exchange for access to Ramos' 12-year-old nephew for the purpose of engaging in a sex act with him. Petitioner admitted that he traveled to Ramos' home where the child was located but could not proceed with the sexual conduct with the child because adults returned to the home. (*Id*. at 18-19).

The Court imposed sentences in both criminal cases on the same date. The Presentence Investigation Report (PSI) prepared in advance of sentencing recommended that the Court accept the parties' plea agreements and impose concurrent sentences of 188 months' imprisonment on Counts 1 and 4, and a concurrent 14-month sentence in case on the alien smuggling charge. (CR Doc. 129 at 31.) The PSI identified defendant's age, medical condition, and sentencing parity among similarly situated defendants as possible grounds for imposing a sentence below the calculated guideline range of life imprisonment (Count 1). (CR Doc. 129 at 30.)

The Court sentenced Petitioner to concurrent terms of 188 months of imprisonment on Counts 1 and 4, followed by concurrent terms of lifetime supervised release, and a concurrent 14 months' imprisonment in CR 20-2370. (CR Doc. 152; CR 20-02370 Doc. 88.) In imposing the sentence, the Court considered Petitioner's age and health, stating: "Frankly, I would impose a sentence higher than the parties' plea agreement given the conduct in this case, but given [Petitioner's] age and medical condition, the Court will accept the parties' plea agreement and find that variance is appropriate." (CR Doc. 161 at 17.) At sentencing, Petitioner stated he was satisfied with the services of his attorney. (*Id*. at 4.)

Henry Ramos was sentenced on December 1, 2022, to 120 months of imprisonment followed by lifetime supervision.[2] (CR Doc. 149.) Ramos pled guilty to two counts of distribution of child pornography (Counts 2 and 5) and one count of possession of child

---

[2] Henry Ramos was initially sentenced on December 1, 2022. (CR Doc. 149.) The sentence was amended on December 14, 2022, (CR Doc. 150.)

pornography (Count 7) on November 23, 2021. (CR Docs. 74, 75.) Ramos' sentencing guideline range was 240 months' imprisonment. (CR. Doc. 142 at 17.) His plea agreement mandated a binding sentence of 120 months' imprisonment. (CR Doc. 75 at 3.) Ramos did not plead guilty to Count 1, conspiracy to sex traffic children, and the charge was dismissed at sentencing pursuant to Ramos' plea agreement. (*Id.* at 1.)

## II.   Discussion

In his § 2255 motion, Petitioner argues that his Sixth Amendment right to effective assistance of counsel was violated by various actions his attorney took or failed to take.[3] Petitioner alleges counsel was ineffective because counsel insisted on a plea deal without sound evidence to support a finding of guilt. He asserts that counsel failed to advise him to consider a jury trial option and failed to inform him that a jury trial would have provided an opportunity to impeach law enforcement witnesses; persuade jurors to find the offense of enticement rather than sex trafficking; call his own witnesses, including Ramos; and provide expert forensic testimony to show that the minor in the pictures was not Ramos' nephew. (CV Doc. 1.) Petitioner states that it is likely that he would have moved for a jury trial rather than accept the terms of the plea agreement had he been equipped with all of the facts and discovery. (CV Doc. 1-1 at 14.) He challenges his counsel's "weighing [of the] best legal strategy against the evidence in Discovery and the potential outcome" and counsel's "mitigation strategy." (*Id.* at 13, 16.)

Petitioner also asserts that counsel should have challenged the consent to search Petitioner's phone and the subsequent search warrant. Petitioner states his consent to search was involuntary because he was under the influence and intimidated by law enforcement officers. He contends that the search warrant obtained as a result of his initial consent should have been precluded as fruit of the poisonous tree. Petitioner also asserts that the plea agreement contained an unrealistic and unsupported guideline range which was not consistent with any of the findings under discovery, and ultimately resulted in a term of

---

[3] Petitioner's motion is long and repetitive. It is sometimes difficult to differentiate Petitioner's claims and his case law descriptions. The Court has done its best to summarize Petitioner's allegations in this Order.

- 4 -

imprisonment that was unwarranted. He contends proof of his counsel's ineffectiveness is that he received a sentence sixty-eight months longer than Ramos' sentence. (CV Doc. 5 at 2.)

### A. Section 2255 Standard

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct his sentence if the sentence was imposed in violation of the United States Constitution or laws of the United States, was in excess of the maximum authorized by law, is otherwise subject to collateral attack, or if the sentencing court was without jurisdiction. 28 U.S.C. § 2255(a). A petitioner is entitled to an evidentiary hearing on his § 2255 motion "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b); *see also United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (stating that summary dismissal is warranted if petitioner's allegations are "palpably incredible or patently frivolous"). However, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Rule 4(b) of the Rules Governing Section 2255 Proceeding.

### B. Waiver of Claims

By pleading guilty, Petitioner has waived all claims except the claim that his plea was not voluntarily and intelligently made due to his attorney's deficient advice (IAC claim). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [range of competence demanded of attorneys in criminal cases]." *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973). While claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief. *Id.* at 267. Notably, Petitioner's plea agreement specifically

informed him that he would be waiving pre-plea constitutional challenges. (CR Doc. 92 at 11-12.).)

In addition, Petitioner specifically waived his right to collaterally attack his conviction and sentence except for claims of ineffective assistance of counsel. (*Id.*) Generally, courts will enforce a defendant's waiver of his right to appeal if the language of the waiver encompasses the defendant's right to appeal on the grounds claimed on appeal and the waiver is knowingly and voluntarily made. *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000). Thus, Petitioner's IAC claim is limited to a claim that counsel provided deficient advice that affected the guilty plea or waiver. *See Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005) ("A plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is unenforceable with respect to an IAC claim that challenges the voluntariness of the waiver."); *see also United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) ("We doubt that a plea agreement could waive a claim of ineffective assistance of counsel based on counsel's erroneously unprofessional inducement of the defendant to plead guilty or accept a particular plea bargain.").

### C.     Ineffective Assistance of Counsel Standards

The Sixth Amendment guarantees criminal defendants a right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When evaluating an ineffective assistance of counsel claim, a defendant must demonstrate that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Id.* at 689. In evaluating IAC claims, judicial scrutiny of counsel's performance is highly deferential and court indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

### D.     If Not Waived, Petitioner's Claims Lack Merit

Petitioner fails to show that his counsel's alleged conduct was unreasonable or that he was prejudiced by such conduct. The record does not support Petitioner's claim that he would have elected to proceed to trial had his attorney provided additional important information about his trial rights, including Petitioner's ability at trial to impeach law

enforcement witnesses; persuade jurors to find the offense of enticement rather than sex trafficking; call his own witnesses, including Ramos; and provide expert forensic testimony to show that the minor in the pictures was not Ramos' nephew.

The record shows that Petitioner was aware of his trial rights. At the change of plea hearing, the Magistrate Judge informed Petitioner of his ability to cross-examine the government's witnesses, to call witnesses and present evidence, and to argue to the jury that the government could not satisfy its burden of proof. At the hearing, Petitioner stated, under oath, that he understood his trial rights and waived those rights. (CR Doc. 160 at 10.)[4] In addition, Petitioner acknowledged in his signed plea agreement that by pleading guilty, he would be giving up his rights "to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; . . . and to appeal or file any other challenge to my conviction or sentence." (CR Doc. 92 at 15.) While he asserts that his attorney "failed to communicate much of the facts, and virtually none of the defense strategy intended," the record refutes his conclusory allegations. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("[c]onclusory allegations. . . do not warrant habeas relief.")

Petitioner also fails to show that he was prejudiced by his allegedly uninformed decision to forego his right to trial. While he argues broadly that he would have the opportunity to cross-examine the government's witnesses at trial, he does not explain how cross-examination would have been beneficial. Petitioner states he would have called an expert on forensics to testify that the photograph was not Ramos' nephew. But it was never contended that the photo was Ramos' nephew, and whether or not it was Ramos' nephew was irrelevant to the charges. Ramos said he sent a picture of another boy in response to Petitioner's request for sexually explicit pictures of his nephew. Petitioner does not dispute that he asked Ramos to send pictures of the nephew, the photo he received from Ramos was child pornography, and Petitioner believed the photo to be of a person under the age of 18. These facts are sufficient to satisfy the elements of Production of Child Pornography.

---

[4] Notably, Petitioner does not claim that his attorney failed to advise him of these same rights in case CR-20-2370-TUC, which was resolved at the same time.

(*See* CR Doc. 92 at 17.)

Petitioner asserts that if he would have proceeded to trial, he could have challenged his written consent to search his phone. Petitioner was not likely prejudiced by counsel's alleged failure to inform him that he could challenge this evidence. The video of Petitioner's interaction with law enforcement shows Petitioner coherently conversing with the agents and asking questions about the effect of his consent. (CV Doc. 4, Attachment B, 23:30-1:15:00.) Law enforcement informed Petitioner that it was "fine" if he did not consent, and Petitioner signed a standard consent form authorizing law enforcement to search and seize his cell phone. (CV Docs. 4 at 9; 4-1 at 2.) The video does not suggest that Petitioner was so intoxicated that he could not have voluntarily consented to the search. And, with evidence lacking to support Petitioner's claim that his consent was not voluntary, his fruit of the poisonous tree argument regarding the subsequent search warrant would also fail.

Petitioner argues that his attorney should have advised him not to accept the plea agreement because there was no evidence to show that he took any "substantial step" to exploit Ramos' nephew, and no evidence that he encouraged the minor to take a picture of himself. (CV. Doc. 1-1 at 17.) Petitioner contends that he was an "unwary innocent," who simply used "poor judgment" in his "sexually-charged" and inappropriate conversations, which might qualify as Enticement, but not Sex Trafficking or Exploitation (Production). (*Id*.) Had counsel advised Petitioner not to accept the plea agreement on this basis, counsel's advice would have been deficient.

Petitioner has a distorted interpretation of the evidence. His phone contained the text conversation with Ramos where Ramos stated he was alone with his 12- and 14-year-old nephews, and Petitioner offered to provide drugs to Ramos "if I get to f*** 1." (CV Doc. 4, Attach. E.) Petitioner offered increasingly large amounts of methamphetamine in exchange for sex with Ramos' nephew and took a substantial step towards engaging in sexual conduct with Ramos' minor nephew when he drove to Ramos' apartment. Shortly after the initial text exchange, Petitioner texted, "I'm already on my way." (*Id*.) A short

time later, he texted Ramos he was "here." (*Id.*)  Petitioner only left because Ramos' sister and mother returned. (CV Doc. 4-5 at 6–7.)[5] No rational juror would conclude that Petitioner's texts to travel to Ramos' house to exchange drugs for sexual access to his nephew was just "inappropriate banter. . . or suggestive role play, and nothing more," or that he did not take a substantial step toward exploiting minors. (CV Doc. 5 at 1-2.) Given this evidence, counsel's advice to plead guilty rather than proceed to trial was well within the range of competence demanded of attorneys in criminal cases, particularly in light of the applicable guideline sentence of life imprisonment.

### E. Sentencing Claims

Petitioner's sentencing claims are also waived because the length of his sentence is not related to the voluntary and intelligent character of his plea. In addition, the claims are without merit. The fact that Ramos received a lower sentence does not demonstrate Petitioner's counsel was ineffective. (CV Doc. 5 at 2.)  Petitioner and Ramos did not engage in the same conduct and the government did not offer them the same plea agreements. Petitioner pled guilty to conspiracy to sex traffic a minor and production of child pornography. (CR Doc. 92 at 1.) Ramos pled guilty to distribution of child pornography and possession of child pornography. (CR Doc. 75 at 2-3.) The charges carried different

---

[5] Petitioner does not challenge these facts.  In fact, Petitioner admitted them under oath at his change of plea hearing, during a colloquy with the court:

> THE COURT: And by text message, did you agree with Mr. Ramos that you would provide him with methamphetamine in exchange for him providing you access to a 12-year-old child that was in his custody by the initials of MV1; correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And that was for the purpose of you engaging in a sex act with that minor; correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Specifically, on January 17th of 2020, did you travel to the home where the victim was located?
>
> THE DEFENDANT: Yes.

(CR Doc. 160 at 18–19.)

maximum and minimum penalties and the plea agreements reflected those differences. Petitioner's guideline range was life; Ramos' was 240 months. Petitioner faced a minimum statutory term of fifteen years imprisonment. By entering into a plea agreement, Petitioner capped his exposure at 188 months—eight months above the mandatory minimum. By entering into the plea agreement, Petitioner received a significant benefit.

## IV.    Certificate of Appealability

Before Petitioner can appeal this Court's judgment, a certificate of appealability (COA) must issue. *See* 28 U.S.C. §2253(c); Fed. R. App. P. 22(b)(1); Rule 11(a) of the Rules Governing Section 2255 Cases. "The district court must issue or deny a certification of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2255 Cases. Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." The court must indicate which specific issues satisfy this showing. *See* 28 U.S.C. § 2253(c)(3). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct. *Id.* Applying these standards, the Court declines to issue a COA because the resolution of the petition is not debatable among reasonable jurists.

//
//
//
//
//
//
//
//

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED:**

Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Doc. 1) is **DENIED.**

 (1) In the event Petitioner files an appeal, the Court **DENIES** issuance of a Certificate of Appealability.

 (2) The Clerk of Court must enter judgment accordingly and **CLOSE** its file in this action.

Dated this 2nd day of October, 2023.

*Jennifer Zipps*
Jennifer G. Zipps
United States District Judge